# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3575

_____

| | | |
|---|---|---|
| Campaign for Family Farms, | * | |
| an unincorporated association of | * | |
| membership organizations; Rodney | * | |
| Skalbeck; James Dale Joens; Richard | * | |
| Smith; Rhonda Perry; Lawrence E. | * | |
| Ginter, Jr.; Stan Scott Schutte, on | * | |
| behalf of themselves and others | * | |
| similarly situated, | * | |
| | * | |
| Plaintiffs - Appellees, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of Minnesota. |
| | * | |
| Dan Glickman, Secretary, United | * | |
| States Department of Agriculture, | * | |
| | * | |
| Defendant - Appellee. | * | |
| | * | |
| National Pork Producers Council, | * | |
| | * | |
| Intervenor Defendant - Appellant. | * | |

_____

Submitted: November 16, 1999
Filed: January 4, 2000

_____

Before WOLLMAN, Chief Judge, BOWMAN, and LOKEN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

The Campaign for Family Farms ("Campaign") and several individual pork producers brought this reverse Freedom of Information Act ("FOIA") suit against the United States Department of Agriculture ("USDA") to prevent it from releasing a petition that calls for a referendum to terminate a federally-imposed assessment on pork sales. The petition includes the names, addresses, and phone numbers of over 19,000 pork producers who signed the petition. The District Court[1] issued a preliminary injunction prohibiting USDA from disclosing the petition and the information it contains. Intervening defendant National Pork Producers Council ("Council"), which initiated the FOIA request at issue in this case, filed this appeal. Granting the Council's motion calling upon us to reach the merits of the case, we hold that USDA's determination that the petition is not exempt from disclosure under FOIA's personal privacy exemption is contrary to law. Accordingly, we remand to the District Court for the entry of a permanent injunction.

I.

The assessments at issue in the requested referendum are imposed under the Pork Promotion, Research, and Consumer Information Act of 1985 ("Act"), 7 U.S.C. §§ 4801-4819 (1994), which Congress designed to finance a research and marketing program to increase the demand and expand the market for pork. See id. § 4801(b)(1). Under the Pork Promotion, Research, and Consumer Information Order ("Order"), 7 C.F.R. pt. 1230 (1999), which implements the terms of the Act, every pork producer and importer must pay an assessment, commonly known in the pork industry as a "checkoff," to the National Pork Board ("Board") on each sale or import of pork. See id. § 1230.71. The Board, in turn, pays monies generated by the checkoff to state pork producer associations and to the Council, which is the Board's general contractor, to fund its research and marketing programs, including the well-known "Pork: The Other

---

[1] The Honorable JOHN R. TUNHEIM, United States District Judge for the District of Minnesota.

White Meat" advertising campaign. The checkoff, currently set at 0.45% of sales and imports, generates a substantial amount of income for the Board and the Council.[2] For example, the Board recently approved a spending budget of $48.1 million for checkoff-funded programs in fiscal year 2000. Of that amount, $36.5 million is allocated for contracts with the Council.

Believing that the checkoff program has not served the interest of independent family farmers, the Campaign, an informal organization of family farm and community membership organizations, launched a petition drive to require USDA to call a referendum on the checkoff program. Authority for such a referendum is found in the Act, which provides that USDA shall conduct a referendum to determine whether pork producers and importers favor the termination or suspension of the order implementing the checkoff program "on the request of a number of persons equal to at least 15 percent of persons who have been producers and importers during a representative period." 7 U.S.C. § 4812(b)(1)(A). If a majority of the producers and importers voting in the referendum favor termination, then USDA shall terminate the program within six months. See id. § 4812(b)(1)(B).

The petition forms distributed by the Campaign, which were preapproved by USDA,[3] stated:

> We, the undersigned U.S. pork producers, petition the Secretary of Agriculture to conduct a referendum to terminate (end) the mandatory Pork Promotion, Research, and Consumer Information Order and the mandatory pork check-off program that it covers. We support a voluntary check-off program.

---

[2] The Order limits the checkoff to a maximum of 0.50% of each sale or import.

[3] The Agricultural Marketing Service of USDA took most of the agency action in this case. For ease of reference, we will refer generically to USDA in this opinion.

By my signature, I certify that after January 1, 1997, I have sold one or more swine and have been assessed check-off payments. *(Only one person may sign per business entity that owns and sells swine.)*

Appellant's App. at 31. The petition forms provided spaces for petitioners to write their names, signatures, addresses, telephone numbers, and the "business name swine are sold under, if any." Id. During the petition drive, the Campaign used two types of forms: a sheet that included space for ten signatures and a postcard that included space for one signature.

In May 1999, the Campaign submitted petition forms containing over 19,000 signatures, approximately 27% more than the 14,986 signatures that USDA advised were necessary to fulfill the 15% statutory requirement. USDA is currently in the process of verifying the petition, that is, ensuring that at least 14,986 of those who signed the petition were actually pork producers or importers during the representative period. To that end, USDA recently finished entering the information contained on the individual petition forms into an electronic database. USDA estimates that it will complete the verification process by January 1, 2000.

In the meantime, on June 17, 1999, the Council filed a request under the Freedom of Information Act, 5 U.S.C. § 552 (1994 & Supp. III 1997), to obtain a copy, in electronic form, of the name, address, phone number, and any related information of all persons who signed the petition. During the next two months, USDA received position letters from the Campaign, the Council, and other interested parties. On August 20, USDA made its final decision to release the petition and issued a two and one-half page opinion explaining the decision. In that opinion, USDA concluded that the petition information is subject to mandatory disclosure under FOIA because it does not qualify for any FOIA exemptions. At issue here is USDA's determination that the

information is not subject to FOIA exemption six, commonly known as the personal privacy exemption.[4]  See 5 U.S.C. § 552(b)(6) (1994).

The personal privacy exemption provides that mandatory FOIA disclosure "does not apply to matters that are . . . (6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  Id.  USDA first questioned whether the personal privacy exemption even applies to the petition information because "these individuals were acting in their business capacities as farmers who are pork producers when they signed the petitions at issue."  Appellant's App. at 73.  Nevertheless, USDA applied the balancing test that is implicit in the language of the personal privacy exemption and purported to balance the petitioners' privacy interest against the public's disclosure interest.

Regarding the petitioners' privacy interest, USDA found "very little or no privacy interest" at stake in the petition information.  Id. at 74.  On this question, USDA determined that the only information that would be revealed by disclosure are petitioners' home addresses, phone numbers, and business name and the fact that petitioners engage in pork production.  Citing a number of district court decisions, USDA concluded that little, if any, privacy attaches to such information and that "the likely consequences of disclosure are *de minimis* or nonexistent" as it is probable that a number of people already know that petitioners are pork producers.  Id.  In addition, USDA found that the nature of petition signing in general and in this case, where petition forms have space for several names and addresses, is essentially a public act: "It is reasonable to assume that a signer will realize that others will have the petition

---

[4] USDA also determined that the petition is not subject to FOIA exemption four, commonly known as the trade secrets exemption, which provides that mandatory FOIA disclosure "does not apply to matters that are . . . (4) trade secrets and commercial or financial information obtained from a person and privileged or confidential."  5 U.S.C. § 552(b)(4) (1994).  Because plaintiffs did not challenge this determination, we will not describe the portion of the administrative opinion addressing exemption four.

in their hands and will be able to see the names, addresses, and telephone numbers of the persons, including themselves, who previously signed." Id. Finally, USDA rejected the claim by the Campaign that petitioners will be subject to retaliation and intimidation as "purely speculative" because the Campaign did not refer to "any specific incidents, or any past history of such incidents." Id. And USDA rejected any analogy to the concerns about retaliation in labor cases involving employee petitions for union authorization because those concerns "apply in a relatively closed work place, where the employer has considerable and immediate leverage over the employees." Id.

As for the public interest in disclosure, USDA merely stated, "Assuming, for the sake of argument, that there is sufficient privacy interest to warrant weighing against any public interest in disclosure, we believe that the process involved should be open at each stage, except to the extent that the ultimate ballot is protected by statute." Id.

On July 29, before USDA had issued its final decision, the Campaign and several individual pork producers filed the present reverse FOIA action. Asserting that disclosure of the petition would violate exemption six of FOIA, the Privacy Act, 5 U.S.C. § 552a (1994), and the First Amendment, plaintiffs sought judicial review of USDA's decision under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 (1994), and declaratory and injunctive relief prohibiting release of the requested information. The District Court allowed the Council, as the organization that had made the FOIA request, to intervene as a defendant on August 17. The District Court granted plaintiffs' motion for a preliminary injunction on September 20. This appeal followed.

II.

Although commonly known as reverse FOIA actions, cases like this one actually are brought under the APA, which provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . , is entitled to judicial review thereof." 5 U.S.C. § 702. FOIA, as solely a disclosure statute, only provides a cause of action to compel disclosure, but not an action to prohibit disclosure. See 5 U.S.C. § 552(a)(4)(B); Chrysler Corp. v. Brown, 441 U.S. 281, 290-94 (1978). Thus, success in reverse FOIA actions generally requires a showing that the agency's decision to disclose was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); see also Chrysler, 441 U.S. at 317-19.

When, as here, the agency has determined that the information sought does not fall within one of FOIA's exemptions from mandatory disclosure, it is especially difficult for plaintiffs to convince a reviewing court to permanently enjoin agency disclosure. That the information sought actually may fall within a FOIA exemption does not end the analysis, for FOIA exemptions are no more than their description implies. That is, they are exemptions from mandatory disclosure only; they do not prohibit agency disclosure. See Chrysler, 441 U.S. at 293 ("We simply hold here that Congress did not design the FOIA exemptions to be mandatory bars to disclosure.").

Normally, then, an agency has discretion to disclose information within a FOIA exemption, unless something independent of FOIA prohibits disclosure.[5] See id.; 1 Burt A. Braverman & Frances J. Chetwynd, Information Law § 10-5, at 424 (1985) ("If information falls within the exemption, the agency may nonetheless disclose as a matter of discretion, unless there is another law that forbids disclosure."). In this case, however, USDA's discretion to release FOIA-exempt information is governed by a USDA regulation entitled "Exemptions and discretionary release":

---

[5] For example, plaintiffs claim that the Privacy Act and the First Amendment prohibit disclosure in this case.

Except where disclosure is specifically prohibited by Executive Order, statute, or applicable regulations, an agency [of USDA] may release records exempt from mandatory disclosure under 5 U.S.C. 552(b) whenever it determines that such disclosure would be in the public interest. Such a record is considered to be in the public interest if the benefit to the public in releasing the document outweighs any harm likely to result from disclosure.

7 C.F.R. § 1.17(b). Under this regulation, had USDA determined that the petition was subject to FOIA's personal privacy exemption, then the agency would have proceeded to balance "the benefit to the public in releasing the document" against "any harm likely to result from disclosure" to determine whether or not to release as a matter of discretion.

This balancing test is almost exactly the same test used to determine whether the petition fell within FOIA's personal privacy exemption in the first place. Under the personal privacy exemption, the agency must balance the privacy interest of the individual against the public interest in disclosure. See Department of Air Force v. Rose, 425 U.S. 352, 372 (1976). The only difference between the two is that balancing under the personal privacy exemption is weighted far more in favor of disclosure than the discretionary release balancing test of the USDA regulation—as evidenced by the "clearly unwarranted" language of the exemption. Therefore, a determination in this case that the petition is subject to FOIA's personal privacy exemption necessarily must also be a determination that USDA should not disclose the petition under its discretionary release regulation.

With that understanding of the legal framework in place, we turn to the issues at hand.

III.

We must first resolve the proper scope of this appeal. At oral argument, we asked whether the District Court considered consolidating the merits of the case with the preliminary injunction hearing under Rule 65. See Fed. R. Civ. P. 65(a)(2) ("Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application."). In the past, we have noted that consolidation under Rule 65 saves time and conserves judicial resources at both the trial and appellate courts. See West Pub'g Co. v. Mead Data Cent., Inc., 799 F.2d 1219, 1229-30 (8th Cir. 1986), cert. denied, 479 U.S. 1070 (1987). We also suggested at argument the possibility of consolidation on appeal. Subsequently, the Council filed a motion, to which USDA is unopposed, asking us to so consolidate in this appeal. The Campaign opposes the motion.

There is little question of our jurisdiction to consolidate the merits of the case with the appeal of the order granting a preliminary injunction. The relevant statutory grant of jurisdiction places no explicit limits on the scope of our review. See 28 U.S.C. § 1292(a) (1994) ("courts of appeals shall have jurisdiction of appeals from: (1) Interlocutory orders of the district courts . . . granting, continuing, modifying, refusing, or dissolving injunctions"). And the statutory grant has been interpreted broadly: "Jurisdiction of the interlocutory appeal is in large measure jurisdiction to deal with all aspects of the case that have been sufficiently illuminated to enable decision by the court of appeals without further trial court development." 16 Charles Alan Wright et al., Federal Practice and Procedure § 3921.1, at 28 (2d ed. 1996) (discussing § 1292(a)(1)); see also Callaway v. Block, 763 F.2d 1283, 1287 n.6 (11th Cir. 1985) (stating that § 1292(a)(1) "grants the courts jurisdiction to reach the merits, at least where there are no relevant facts at issue and the matters to be decided are closely related to the interlocutory order being appealed"). Once jurisdiction is established, we have a broad statutory grant of power to dispose of the case as we deem appropriate. See 28 U.S.C. § 2106 ("The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a

court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances."); Deckert v. Independence Shares Corp., 311 U.S. 282, 286-87 (1940) (affirming power of appellate court to reach merits of case before it on interlocutory appeal and dismiss action); 15A Wright et al., supra, § 3901, at 25.

That we have the power to reach the merits does not mean necessarily that we should do so in this case. Our case law traditionally cautions against a broad scope of review on appeal of a preliminary injunction: "An appellate court, upon an appeal from an order granting or denying a temporary injunction, will ordinarily not consider the merits of a case further than is necessary to determine whether the trial court abused its discretion." Shearman v. Missouri Pac. R.R. Co., 250 F.2d 191, 195 (8th Cir. 1957) (quoting Pratt v. Stout, 85 F.2d 172, 177 (8th Cir. 1936)); see also National Credit Union Admin. Bd. v. Johnson, 133 F.3d 1097, 1101 (8th Cir. 1998) (stating that court does not "pass judgment on the underlying issues" in reviewing district court's grant of preliminary injunction"); cf. Callaway, 763 F.2d at 1287 n.6 (describing this as "a rule of orderly judicial administration only"). This is so because the district court's findings of fact and conclusions of law on an application for a preliminary injunction are "tentative and provisional, in the sense that different findings . . . might be warranted after a trial on the merits." Independent Fed. of Flight Attendants v. Trans World Airlines, Inc., 655 F.2d 155, 159 (8th Cir. 1981); see also University of Texas v. Camenisch, 451 U.S. 390, 395 (1981).

But here we are faced with a purely legal issue on a fixed administrative record,[6] namely whether, when we apply the APA standard of review, we must sustain USDA's decision that the petition was not subject to FOIA's personal privacy exemption. As we explained above, it is unnecessary for us to decide more because if the petition is within the exemption, then USDA surely cannot release it under its discretionary release regulation. And if it is not within the exemption, then neither the Privacy Act[7] nor the First Amendment[8] protect it from disclosure. The considerations that caution against a broad scope of review in the usual interlocutory appeal—that is, a tentative and provisional record with conflicting material facts—simply are not present here. This Court has recognized in the past that a district court may properly reach the merits in such a case without expressly ordering consolidation under Rule 65 and without giving the parties adequate notice. See United States ex rel. Goldman v. Meredith, 596

---

[6] Judicial review under the APA of informal agency adjudications is normally confined to the administrative record. See Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985). USDA's decision that the petition must be released under FOIA is considered an informal adjudication. See Daisy Mfg. Co. v. Consumer Prods. Safety Comm'n, 133 F.3d 1081, 1083 (8th Cir. 1998). In opposing the motion to consolidate, the plaintiffs for the first time allege that USDA's factfinding procedures in FOIA cases are inadequate and thus de novo review is appropriate. See Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971) ("*de novo* review is authorized when the action is adjudicatory in nature and the agency factfinding procedures are inadequate"). Because plaintiffs failed to make this allegation in the District Court or in this Court before submission of the appeal, we decline to consider it. See United States v. Elliott, 89 F.3d 1360, 1367 (8th Cir.1996), cert. denied, 519 U.S. 1118 (1997).

[7] The Privacy Act only prevents third-party disclosure of covered records when FOIA does not require disclosure. See 5 U.S.C. § 552a(b)(2). If the petition is not subject to the exemption, then FOIA requires disclosure and the Privacy Act does not apply.

[8] FOIA's personal privacy exemption appears to be at least as inclusive as the privacy protections implicit in the First Amendment.

F.2d 1353, 1358 (8th Cir.) ("[D]isposition on the merits may be appropriate whenever the evidence presented at the preliminary hearing indicates that there is no conflict of material fact that would justify holding the full trial on the merits."), cert. denied, 444 U.S. 838 (1979).  Further, several of our sister circuits have reached the merits of the case on appeal from an order granting or denying a preliminary injunction.  See Callaway, 763 F.2d at 1287 (reaching merits on appeal from denial of preliminary injunction because "both sides' arguments go to the merits, no facts are at issue and the questions raised are purely legal ones"); United Parcel Serv., Inc. v. United States Postal Serv., 615 F.2d 102, 106-07 (3d Cir. 1980) (reaching merits of underlying legal issues despite fact that preliminary injunction was moot); Hurwitz v. Directors Guild of America, Inc., 364 F.2d 67, 69-70 (2d Cir.) (issuing permanent injunction on appeal from denial of preliminary injunction in case with no triable issues of fact), cert. denied, 385 U.S. 971 (1966).  Like the Second Circuit, we can see "no reason why the cautious exercise of such a power would be undesirable."  Hurwitz, 364 F.2d at 70. Accordingly, we exercise our discretion to reach the merits of USDA's determination that the petition is not subject to FOIA's personal privacy exemption.

IV.

We now consider the merits of USDA's determination that the petition is not subject to FOIA's personal privacy exemption—that is,  we consider whether the determination was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(a).  To answer this question, we carefully review the administrative record to determine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  Overton Park, 401 U.S. at 416.

We need only look as far as the language of the petition itself to determine that USDA's determination was not in accordance with law.  Besides calling for a referendum on the mandatory checkoff program, those signing the petition all declared

-12-

their position on the ultimate issue: "We support a voluntary checkoff program."  In so doing, petitioners all unequivocally declared that they would vote to end the mandatory program and thus return to the voluntary program.

To make public such an unequivocal statement of their position on the referendum effectively would vitiate petitioners' privacy interest in a secret ballot.  As the Supreme Court has recognized, the secret ballot is of paramount importance to our system of voting.  In Burson v. Freeman, 504 U.S. 191, 206 (1992), for example, the Court found a "widespread and time-tested consensus" that the secret ballot is necessary to prevent voter intimidation and election fraud.  Three terms later, the Court used the tradition of the secret ballot, which it described as "the hard-won right to vote one's conscience without fear of retaliation," in recognizing a First Amendment interest in anonymous political advocacy.  McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 343 (1995); see also Buckley v. Valeo, 424 U.S. 1, 237 (1976) (Burger, C.J., concurring in part and dissenting in part).  Relying on this strong interest in a secret ballot, the Sixth Circuit invalidated a Kentucky ballot access law that required signers of candidate petitions to declare that they desired to vote for the candidate.  See Anderson v. Mills, 664 F.2d 600, 607-09 (6th Cir. 1981).  While we need not decide whether there is a constitutional right to a secret ballot, we do not hesitate to hold that there is a strong and clearly established privacy interest in a secret ballot and that this privacy interest is no less compelling in the context of FOIA's personal privacy exemption than it is in other contexts.  We also believe that in the circumstances of this case the privacy interest in a secret ballot is severely threatened.  Releasing this petition, which contains a clear declaration of how the petitioners intend to vote in the referendum, would substantially invade that privacy interest.

Though many people signed the petition forms, each with space for ten signatures, and thus probably realized that a few individuals signing afterwards would be able to see their names, in so doing they did not waive their privacy interests under FOIA.  Although an individual's expectation of confidentiality is relevant to analysis of

-13-

the privacy exemption, see 1 Braverman & Chetwynd, supra, § 10-4.2.2, at 416, here the petitioners would have no reason to be concerned that a limited number of like-minded individuals may have seen their names and thus discovered their position on the referendum.  After all, they knew the petition forms would be collected and submitted to USDA by the Campaign.  The present concern is that the petition not become available to the general public, including those opposing a return to the voluntary checkoff program.

This type of privacy interest—one in which individuals seek to keep information from the general public while simultaneously divulging it for limited purposes to others—is not unusual.  Of course, FOIA's privacy exemption is a prime example: individuals divulge personal information to the government for limited purposes with the expectation that the information will not become available to the general public.  Even information that is available to the general public in one form may pose a substantial threat to privacy if disclosed to the general public in an alternative form potentially subject to abuse.  See United States Dept. of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749 (1989) (holding that "rap sheets" are protected from mandatory FOIA disclosure under exemption 7(c)'s "unwarranted invasion of personal privacy" standard although information was matter of public record).  "[T]he fact that an event is not wholly 'private' does not mean that an individual has no interest in limiting disclosure or dissemination of the information."  Id. at 770 (citation omitted).

Additionally, our conclusion that plaintiffs have a substantial privacy interest in the petition is not diminished by the fact that many individuals may have signed it in their business or entrepreneurial capacities.  The Supreme Court has construed the personal privacy exemption broadly as a general exemption that excludes "'those kinds of files the disclosure of which might harm the individual.'"  United States Dept. of State v. Washington Post Co., 456 U.S. 595, 599 (1982) (quoting H.R. Rep. No. 1497, 89th Cong., 11 (1966)).  An overly technical distinction between individuals acting in a purely private capacity and those acting in an entrepreneurial capacity fails to serve

-14-

the exemption's purpose of protecting the privacy of individuals. Whether petitioners sold pork as an individual, a sole proprietor, or as a majority shareholder in a closed corporation does little to diminish the fact that disclosure of the petition will reveal the individuals who declared their position on this controversial issue. Cf. National Parks & Conservation Ass'n v. Kleppe, 547 F.2d 673 (D.C. Cir. 1976) (holding that financial records of individually-owned businesses are subject to balancing test of personal privacy exemption); 1 Braverman & Chetwynd, supra, § 10-4.1.3, at 412 ("[I]nformation about closely-held corporations or sole proprietorships may be protected if the information can be identified as applying to a particular individual.").

FOIA's personal privacy exemption contemplates a balancing of the individual's privacy interest against the public's disclosure interest. See Rose, 425 U.S. at 372 (interpreting "clearly unwarranted" language of personal privacy exemption). USDA weighed the public interest in an open process, "except to the extent the ultimate ballot is protected,"[9] against the scant privacy interest it found petitioners have in the petition. Appellant's App. at 74. Given its meager understanding of the petitioners' privacy interest, USDA's determination that the balance weighed in favor of disclosure is not surprising. The Council's description of the public interest in disclosure is more specific; it claims that disclosure is necessary to ensure public oversight of the verification process. The Council's description of the public interest is consistent with the principle that "the basic purpose of the Freedom of Information Act is to open agency action to the light of public scrutiny." Rose, 425 U.S. at 372. Nevertheless, we conclude that the substantial privacy interest in a secret ballot, which both USDA and the Council concede should be protected, overrides whatever public interest there may be in oversight of the verification process. Though it is not important to our decision, we do not mind saying that we think the public interest in such oversight is slender,

---

[9] In its decision, USDA appeared to assume that the ultimate ballot would be protected by statute. In fact, the secrecy of ballots in USDA referendums is not protected by statute, but traditionally is protected as a matter of agency policy.

since the only parties who have any apparent reason to much care whether there is an election and whether the checkoff system stands or falls are the various pork producers represented on one side by the Council and on the other by the Campaign. Given our analysis of the strong privacy interests at stake in this case and that this privacy interest, in fact, stems from the protection the ultimate ballot is due, the balancing in this case can only come out one way—in favor of protecting the privacy of the petitioners. Having determined that the balancing test for application of FOIA's personal privacy exemption clearly favors protecting privacy, it necessarily follows that USDA's less onerous balancing test applicable to its discretionary-release regulation also must prohibit disclosure of the petition.

Accordingly, we hold that USDA's determination that the petition is not subject to FOIA's personal privacy exemption cannot be upheld and that USDA, under its own regulations, may not release the requested information as a matter of discretion. We therefore remand to the District Court for entry of a permanent injunction prohibiting USDA from releasing the information sought by the Council in its FOIA request.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-16-