# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-1234

_____

American Farm Bureau Federation; National Pork Producers Council,

*Plaintiffs - Appellants*,

v.

U.S. Environmental Protection Agency; Gina McCarthy, Administrator of the U.S. Environmental Protection Agency,

*Defendants - Appellees,*

Food & Water Watch; Environmental Integrity Project; Iowa Citizens for Community Improvement,

*Intervenor Defendants - Appellees*,

------------------------------

National Federation of Independent Business Small Business Legal Center,

*Amicus on Behalf of Appellant(s).*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 22, 2015
Filed: September 9, 2016

_____

Before LOKEN, MURPHY, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

The American Farm Bureau Federation and the National Pork Producers Council appeal the district court's ruling that they lack Article III standing to bring a "reverse" Freedom of Information Act ("FOIA") suit, *see* 5 U.S.C. §§ 552, 706(2)(A), challenging the Environmental Protection Agency's disclosure of certain information about concentrated animal feeding operations. The associations contend that this disclosure is an unlawful release of their members' personal information. Assuming, for purposes of standing analysis, that their claim would be successful on the merits, the associations have established a concrete and particularized injury in fact traceable to the EPA's action and redressable by judicial relief. We therefore conclude the district court erred in dismissing this case for lack of standing. We further determine that the EPA abused its discretion in deciding that the information at issue was not exempt from mandatory disclosure under Exemption 6 of FOIA. *Id.* § 552(b)(6). Accordingly, we reverse and remand for the district court to consider the associations' request for injunctive relief.

I.

The Clean Water Act prohibits the discharge of pollutants into waters of the United States, except as authorized under the Act. 33 U.S.C. §§ 1311(a), 1342, 1362(7), (12), (16). The Act regulates numerous sources of potential water pollution, including concentrated animal feeding operations ("CAFOs"). *Id.* § 1362(14). A CAFO is any area where a certain number of animals are "stabled or confined and fed or maintained for a total of 45 days or more in any 12-month period" and where "[c]rops, vegetation, forage growth, or post-harvest residues are not sustained in the normal growing season." 40 C.F.R. § 122.23(b)(1), (2), (4), (6). A CAFO may not

discharge pollutants into the waters of the United States unless it obtains a National Pollutant Discharge Elimination System permit from the EPA or an authorized state agency. *See* 33 U.S.C. §§ 1311(a), (e), 1342, 1362(14); 40 C.F.R. § 122.23(d), (f).

A person seeking a system permit for a CAFO from either the EPA or an authorized state agency goes through the same application process. 40 C.F.R. §§ 122.21(i), 123.25(a)(4). An applicant submits an array of information, including the name of the owner or operator of the facility, the facility location and mailing address, a topographic map of the geographic area where the feeding operation is located, and the estimated amounts of manure, litter, and process wastewater generated per year. *Id.* § 122.21(i); *see id.* § 122.23(d). The Act requires that permit applications and issued permits must be available to the public. 33 U.S.C. § 1342(b)(3), (j).

In 2008, the Government Accountability Office issued a report stating that the EPA's information about CAFOs that received system permits from authorized state agencies was inconsistent and inaccurate. This report recommended that the agency compile a national inventory of CAFOs with system permits. U.S. Gov't Accountability Office, GAO-08-944, *Concentrated Animal Feeding Operations: EPA Needs More Information and a Clearly Defined Strategy to Protect Air and Water Quality from Pollutants of Concern*, at 48 (2008). At that time, a CAFO was required to obtain a system permit only if the operation actually discharged pollutants. The EPA expanded its system-permit requirement to include any CAFO that was designed, constructed, operated, and maintained in a manner that the CAFO would discharge, but the Fifth Circuit vacated the revised regulations as exceeding the agency's statutory authority. *Nat'l Pork Producers Council v. EPA*, 635 F.3d 738, 746, 756 (5th Cir. 2011).

In addition to issuing these revised regulations, the EPA agreed—as part of a settlement agreement with environmental organizations—to propose a separate rule

requiring all CAFOs to submit information to the EPA, whether or not the operations had a system permit. The proposed rule required certain information from all CAFOs: the contact information of the CAFO owner, the location of the operation's production area, and whether the operation had applied for a system permit. National Pollutant Discharge Elimination System (NPDES) Concentrated Animal Feeding Operation (CAFO) Reporting Rule, 76 Fed. Reg. 65,431, 65,437 (proposed Oct. 21, 2011). Comments from industry observers and States, however, suggested that much of the information to be collected under the proposed rule was already available from sources other than the owners. The EPA consequently withdrew its proposed reporting rule and decided to collect the relevant information from federal, state, and local government sources. National Pollutant Discharge Elimination System (NPDES) Concentrated Animal Feeding Operation (CAFO) Reporting Rule, 77 Fed. Reg. 42,679, 42,681 (July 20, 2012).

Although the GAO had criticized the EPA's internal data systems as incomplete, the agency did retrieve what information was available about system permits for CAFOs before issuing the proposed reporting rule. Much of the information from the agency's internal data systems is available to the public in a different format on a public website. *Enforcement and Compliance History Online*, Env'tl Protection Agency, https://echo.epa.gov/ (last visited Aug. 25, 2016). The website's publicly available information includes "facility names, locations, permit information, inspections, violations, enforcement actions (completed actions only), and penalties."

After withdrawing the proposed reporting rule, the EPA obtained information about CAFOs for its national inventory from several sources. The agency has collected information from thirty-five States: twenty-seven States provided publicly accessible information at the EPA's request, two States referred the agency to the federal data systems for their CAFO information, and the agency retrieved CAFO information from eight States' websites (including two States that provided

information at the EPA's request).  The EPA also gathered information about six States from its regional offices.  While most of the information received from the States related to CAFOs, some States also gave the EPA information about other facilities.

While the agency was in the process of collecting this information, three organizations—Earthjustice, the Pew Charitable Trusts, and the Natural Resources Defense Council—submitted FOIA requests for the EPA's records with information about CAFOs.  Some of the requested information included the legal name of the owner of the CAFO and the owner's mailing address, e-mail address, and primary telephone number.  In response, the EPA released to the requesters information gathered from twenty-eight States and from the EPA's data systems.  The EPA did not release information obtained from the remaining seven States, because the agency gathered those data after the FOIA requests.  After the agency notified agricultural stakeholders, including the Farm Bureau and the Producers Council, of the release, the stakeholders raised concerns.  The EPA agreed to investigate whether it had disclosed information that was not readily available to the public and that could trigger privacy concerns under FOIA.

In a letter dated April 4, 2013, the EPA informed the agricultural stakeholders of the agency's view that information concerning CAFOs from nineteen States did not implicate privacy interests that made the records eligible for withholding under Exemption 6 of FOIA. 5 U.S.C. § 552(b)(6). Exemption 6 excludes from mandatory disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *Id.*  The EPA determined that Exemption 6 did not apply because the information from the nineteen States was accessible on a public website or available to the public on request, and that the release of that information thus did not implicate a substantial privacy interest.  Even assuming a privacy interest, the agency determined that the weight of the public interest rendered any invasion of privacy not "clearly unwarranted."

On the same day as the April 4 letter, the EPA provided an amended response to the FOIA requesters after completing its review. The agency disclosed all information regarding CAFOs in nineteen States. The agency did not disclose some of the information obtained from several other States, however, because that information pertained to facilities without system permits or facilities not subject to federal or state mandatory permitting disclosure requirements. The EPA reasoned that the latter subset of information—which contained individual names, phone numbers, mailing addresses, and e-mail addresses—implicated a substantial privacy interest that outweighed the public interest in disclosure. At the close of the response, the EPA asked the FOIA requesters to return the agency's initial response, and all of the requesters acceded to the request.

The EPA currently has information regarding CAFOs in seven additional States that was obtained after the initial FOIA requests at issue here. The agency has not yet released that information to the FOIA requesters. Since its amended response to the original FOIA requests, the agency has received seven more information requests seeking the same or similar information as the original requests; some requests also seek the information from the seven States that had not been released previously. The agency deferred those requests pending resolution of this litigation.

The Farm Bureau and the Producers Council brought this "reverse" FOIA action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). They sought an order preventing the EPA from making additional disclosures of personal information that it collects from the States and requiring the agency to recall the personal information that it released. The Farm Bureau and the Producers Council argued that 5 U.S.C. § 552(b)(6), known as Exemption 6 of FOIA, protected the information from mandatory disclosure, and that the agency abused its discretion and acted arbitrarily and capriciously or contrary to law by not withholding the information. Several environmental organizations—Food & Water Watch,

Environmental Integrity Project, and Iowa Citizens for Community Improvement—intervened in support of disclosure of the information.

The parties filed cross-motions for summary judgment. The district court granted summary judgment for the EPA and the Intervenors, concluding that the Farm Bureau and the Producers Council lacked standing under Article III of the Constitution. The Farm Bureau and the Producers Council appeal.

II.

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff establishes standing by showing that he has suffered an injury in fact that is fairly traceable to the challenged conduct of the defendant and that will likely be redressed by a favorable decision. *Id.* at 560-61. "The standing inquiry is not, however, an assessment of the merits of a plaintiff's claim." *Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1023 (8th Cir. 2012); *see Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009). In assessing a plaintiff's Article III standing, we must "assume that on the merits the plaintiffs would be successful in their claims." *Muir v. Navy Fed. Credit Union*, 529 F.3d 1100, 1106 (D.C. Cir. 2008).

Associations like the Farm Bureau and the Producers Council have standing to bring suit on behalf of their members, provided that the "members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). The EPA admits that

the latter two elements are satisfied; the only dispute is whether any members of the organizations would have standing to sue in their own right.

The district court accepted the EPA's argument that the Farm Bureau and the Producers Council lack standing because the personal information of their members is already publicly available. The Farm Bureau and the Producers Council argue that the court's analysis conflates the requirements of standing with the merits of their claims under the APA.

Injury in fact means an actual or imminent invasion of a concrete and particularized, legally protected interest. *Lujan*, 504 U.S. at 560. A party's injury in fact is distinct from its potential causes of action. *Carlsen v. GameStop, Inc.*, No. 15-2453, 2016 WL 4363162, at *3 (8th Cir. Aug. 16, 2016); *Braden*, 588 F.3d at 591, 593. Accordingly, a plaintiff need not prove an unlawful action to have standing, because "whether a statute has been violated 'is a question that goes to the *merits . . .* and not to constitutional standing.'" *Muir*, 529 F.3d at 1105-06 (quoting *La. Energy & Power Auth. v. FERC*, 141 F.3d 364, 367 (D.C. Cir. 1998)); *see Red River Freethinkers*, 679 F.3d at 1023.

The EPA reasons that because the disputed information was publicly available on the Internet or available for public review, further distribution of the information could not establish any injury. That conclusion, however, assesses the merits of the asserted privacy interest under FOIA rather than whether the associations' members had a legally cognizable interest in preventing the agency's release of their personal information. It was undisputed on the motions for summary judgment that the agency has released or will release personal information of association members without their consent as part of its response to the FOIA requests. That is sufficient to establish a concrete and particularized injury in fact: the nonconsensual dissemination of personal information. Whether the release of this information "would constitute a

clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), is a separate inquiry into the merits of the claim.

The EPA also contends that the plaintiffs cannot show causation or redressability. The agency asserts that the disputed information is already publicly available through the States, and the court cannot prevent further distribution and use of that information by third parties. This argument, however, rests on the agency's flawed understanding of the plaintiffs' alleged injury in fact. The asserted injury is the nonconsensual disclosure of personal information by the EPA. That injury was caused by EPA's disclosures and threatened disclosures, and it can be redressed by an order requiring EPA to refrain from future disclosures and to recall information previously disclosed.

The Intervenors argue that the claims of the Farm Bureau and the Producers Council are moot because the EPA has already produced the information requested, and the information will remain in the public domain. The case is still live, however, because EPA has proposed to disclose more information from seven States, including Minnesota, and because EPA has the capacity to request the return of information that it already disclosed.

The Intervenors further contend that a dispute over the unreleased information from seven States is not ripe for review because the EPA has not made a final decision about whether to disclose it. *See* 5 U.S.C. § 704. The agency's decision letter of April 4, however, is a "final agency action" under § 704, because the letter marks "the consummation of the agency's decisionmaking process . . . from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotations omitted). Based on its analysis in the April letter, the agency committed to release data that it had gathered about CAFOs. The agency agreed to delay releasing information gathered from certain States only until the conclusion of this litigation. The agency's decision letter is therefore is a final, reviewable action

under the APA. For essentially the same reasons, the decision is ripe for review. *See Hawkes Co. v. U.S. Army Corps of Eng'rs*, 782 F.3d 994, 1002 n.2 (8th Cir. 2015).

In sum, members of the Farm Bureau and Producers Council allege that the EPA's disclosure of their personal information was based on a misapplication of a FOIA exemption designed to protect personal privacy. That allegation and the undisputed evidence of nonconsensual disclosures or impending disclosures by the EPA suffice to establish an injury in fact that was caused by the agency and is redressable by the court. The associations therefore have standing to challenge the agency's action.

III.

Although the district court ruled that the plaintiffs lacked standing to sue, the court's decision in substance addressed the merits of whether the EPA's disclosure constituted a clearly unwarranted invasion of personal privacy subject to Exemption 6 of FOIA. As the district court's decision on that question is foreordained, there is no point in remanding for the court to address the merits of the agency's action on Exemption 6. The parties have fully briefed the issue, and neither party identifies a question of fact that must be resolved by the district court. We thus proceed to consider whether the EPA's decision concerning Exemption 6 was an abuse of discretion, arbitrary and capricious, or contrary to law.

As a general matter, FOIA requires that the government provide information requested under FOIA to a requester. 5 U.S.C. § 552(a); *see In re Dep't of Justice*, 999 F.2d 1302, 1305 (8th Cir. 1993) (en banc). The Act, however, includes nine categories of information that are exempt from mandatory disclosure. 5 U.S.C. § 552(b). If requested information is exempt from mandatory disclosure, the agency normally may still elect to disclose the information, "unless something independent

of FOIA prohibits disclosure." *Campaign for Family Farms v. Glickman*, 200 F.3d 1180, 1185 (8th Cir. 2000).

Exemption 6 of FOIA states that an agency is not required to disclose "personnel and medical files and similar files" if such disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). An agency's review under Exemption 6 involves three steps. First, the agency must determine whether the request seeks personnel, medical, or similar files. The parties do not dispute that the information here involves "similar files."

The agency must then determine whether disclosure would compromise a "substantial" privacy interest. *See Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1228-29 (D.C. Cir. 2008); *accord Cook v. Nat'l Archives & Records Admin.*, 758 F.3d 168, 175-76 (2d Cir. 2014). If the agency determines that there is a substantial privacy interest in the information, the agency must then "balance the privacy interest of the individual against the public interest in disclosure" to determine whether the exemption applies. *Campaign for Family Farms*, 200 F.3d at 1185; *see Multi Ag Media*, 515 F.3d at 1229-31.

As a disclosure statute, FOIA provides only a cause of action to compel disclosure; it does not provide a means of preventing disclosure. *See* 5 U.S.C. § 552(a)(4)(B); *Chrysler Corp. v. Brown*, 441 U.S. 281, 290-94 (1979). A party aggrieved by an actual or impending disclosure, however, may bring a "reverse" FOIA action under the APA and obtain relief if the agency's decision to disclose the information is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a); *see Campaign for Family Farms*, 200 F.3d at 1184. A reviewing court cannot substitute its judgment for a permissible judgment of the disclosing agency, but the agency must examine the relevant factors and articulate a satisfactory explanation for its action. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

-11-

The associations dispute the agency's conclusion that disclosure of the information would not compromise a "substantial" privacy interest. *See Cook*, 758 F.3d at 175-76; *accord Multi Ag Media*, 515 F.3d at 1229. In this analysis, "[a] substantial privacy interest is anything greater than a *de minimis* privacy interest." *Multi Ag Media*, 515 F.3d at 1229-30. While Exemption 6 speaks only of "personal privacy," we have never employed an "overly technical distinction between individuals acting in a purely private capacity and those acting in an entrepreneurial capacity." *Campaign for Family Farms*, 200 F.3d at 1189; *see Multi Ag Media*, 515 F.3d at 1228. Rather, we construe Exemption 6 broadly "as a general exemption that excludes 'those kinds of files the disclosure of which might harm the individual.'" *Campaign for Family Farms*, 200 F.3d at 1188-89 (quoting *U.S. Dept. of State v. Wash. Post Co.*, 456 U.S. 595, 599 (1982)). A CAFO owner thus may have a substantial individual privacy interest in the disclosure of the operations' records if the disclosure of those files would harm the owner personally. *Id.*

The information requested here includes personal information about CAFO owners, including names, home addresses, telephone numbers, GPS coordinates of homes, and information from which financial information could be gleaned. Declarant David Rydberg, for example, avers that his home address is the same as the address of his facility, that his family lives at that address, and that the global positioning coordinates that he provided to the State of Iowa match the location of his home. The EPA, however, has released that information over Rydberg's objection. The Farm Bureau and the Producers Council provide similar affidavits from several Minnesota farmers opposed to the impending release of their personal information by the agency.

The disclosure of names, addresses, telephone numbers, GPS coordinates, and financial statuses can implicate substantial privacy interests. *See U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 500 (1994); *Campaign for Family Farms*, 200 F.3d at 1188-89; *Multi Ag Media*, 515 F.3d at 1230. In this context, the disclosure of such

information would constitute a substantial invasion of privacy, because it would facilitate unwanted contact with CAFO owners by FOIA requesters and their associates, and even potential harassment of CAFO owners and their families. *See U.S. Dep't of State v. Ray*, 502 U.S. 164, 176 n.12 (1991); *Forest Serv. Emps. for Envtl. Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1026 (9th Cir. 2008) ("The avoidance of harassment is a cognizable privacy interest under Exemption 6."). One member of Food & Water Watch, for example, admits to having "participated in aerial and ground investigations of poultry facilities" and avers that "to protect our waterway under the Act, it is important to know the name and proper contact information for these facilities and their owners and operators." Declarant Rick Grommersch of Minnesota provided details of an incident during which members of an environmental organization entered his property and told him that they were going to post pictures of his property online. The agency itself acknowledged in its proposed reporting rule "that providing latitude and longitude information might raise security or privacy concerns." National Pollutant Discharge Elimination System (NPDES) Concentrated Animal Feeding Operation (CAFO) Reporting Rule, 76 Fed. Reg. at 65,438.

The EPA's decision letter nonetheless concluded that Exemption 6 did not apply because the requested information was "well known or widely available within the public domain." The agency emphasizes that much of the disputed information is accessible on federal or state websites or otherwise available in the public record.

The agency's conclusion on this point was contrary to law. "An individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form." *FLRA*, 510 U.S. at 500. The EPA here is more than simply a second source for identical, publicly available information. The agency has aggregated vast collections of data from the majority of States—much of it obtained through state-specific information requests—and provided it to requesters in a single response.

-13-

In *United States Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 757 (1989), news organizations sought the release of criminal "rap sheets" compiled by the United States Department of Justice. These rap sheets compiled publicly-available information from local, state, and federal law enforcement agencies into a single report of subjects' personal information and criminal history. *Id.* at 752. The Supreme Court upheld the Justice Department's refusal to release the rap sheets, and rejected the requesters' argument that there was no exemption from FOIA disclosure because the information was publicly available. The Court noted the "vast difference" between public records that might be found after a diligent search through various administrative files and "a computerized summary located in a single clearinghouse of information." *Id.* at 764. *Reporters Committee* considered a privacy interest under Exemption 7 of FOIA rather than Exemption 6, but the decision provides important guidance in assessing a privacy interest under Exemption 6. *See FLRA*, 510 U.S. at 496 n.6.

Like the requesters in *Reporters Committee*, the requesters here seek access to "a single clearinghouse of information" compiled by a government agency. While the advent of the Internet has made some of the information at issue here more easily accessible than the information in *Reporters Committee*, CAFO owners still have a privacy interest in preventing the mass aggregation and release of their personal information by the government. The agency's own extensive collection efforts and advocacy groups' multi-year effort to obtain the data show that the EPA has consolidated information that would otherwise exist in considerably greater obscurity. *See Reporters Comm.*, 489 U.S. at 780.

That information about a particular owner might be obtained through publicly-available sources likewise does not preclude a substantial privacy interest. There is an important distinction "between the mere *ability* to access information and the likelihood of actual public *focus* on that information." *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 750 F.3d 927, 933 (D.C. Cir. 2014). Although a requester

-14-

might be able to find the information he seeks on a website or in a State's publicly available files, the agency's comprehensive listing of CAFOs substantially increases the public visibility and accessibility of that information. The agency's release of the complete set of data on a silver platter, so to speak, eliminates the need for requesters and others to scour different websites and to pursue public records requests to create a comprehensive database of their own. If the information were so easily accessible, then it is passing strange that the parties would engage in protracted and expensive litigation to secure it through the Freedom of Information Act. *See Reporters Comm.*, 489 U.S. at 764. We conclude that the organizations' members have a substantial privacy interest in the personal information at issue.

As to some of the disclosures, the agency concluded alternatively that even if there were a substantial privacy interest in the number, size, and location of animal livestock operations, that privacy interest was outweighed by the public's interest in disclosure. In assessing that conclusion, "the only relevant public interest" is "the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Bibles v. Or. Nat. Desert Ass'n*, 519 U.S. 355, 355-56 (1997) (per curiam) (quotations and brackets omitted). FOIA's purpose "is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *Reporters Comm.*, 489 U.S. at 773; *see FLRA*, 510 U.S. at 495-96.

The EPA asserts that there is a public interest in disclosing the collected CAFO information because it provides the public with information about the agency's efforts to implement the Clean Water Act. But the disclosure of names, addresses, phone numbers, e-mail addresses, and GPS coordinates does not directly shed light on the agency's performance of its statutory duties. *See* 489 U.S. at 773. The EPA argues instead that the disclosures will indirectly promote this public interest by showing that the agency followed through on its commitment to gather CAFO information

-15-

from existing sources and demonstrating that the agency is succeeding in its efforts to create a comprehensive inventory of information about CAFOs.

The EPA's contention is unconvincing, because other records responsive to the FOIA requests address those two public interests without invading personal privacy. The EPA's 2012 memorandum of understanding with the Association of Clean Water Administrators details the agency's collaborative effort with the Association to focus on "identifying CAFOs and obtaining pertinent information about CAFOs on a state by state basis for use" by the EPA. The memorandum explains the agency's "plan to take the following steps to achieve" the listed objectives, including that the EPA would "[u]se best efforts to facilitate the collection and transfer of CAFO information currently maintained by states" to the agency. Another internal document sets forth an "Implementation Workplan" that outlines "specific tasks" to meet the agency's "action items" and establishes a time frame for collecting the CAFO data.

The records also show that the agency followed through on its plan. An e-mail from an EPA employee in November 2012 explained to a Florida state official that the agency had completed forty-two telephone calls with state officials to collect CAFO information. The e-mail attached a standard agenda used for those calls, which included discussions about the "[a]mount and format of state permitting records for CAFO data elements," along with the "[e]xchange of information" between the respective State and the EPA. There is a presumption of regularity accorded to the EPA's collection efforts, and the agency records described above largely address the public interest in knowing how the agency proceeded to collect CAFO information in the wake of the GAO report. *See Ray*, 502 U.S. at 179.

The disputed spreadsheets themselves could be disclosed in redacted form and still inform the public about the agency's collection efforts. *See id.* at 174, 177-79. If information implicating a substantial privacy interest were redacted, the spreadsheets with columns reflecting only system permit status, city, county, and zip

-16-

code would reflect the scope and comprehensiveness of the EPA's collection efforts without intruding on the personal privacy of CAFO owners. The marginal public interest in disclosing personal information such as names, street addresses, phone numbers, e-mail addresses, and GPS coordinates is *de minimis*. To recognize a public interest in disclosure of private information merely to verify that it has been collected would swallow the rule that Exemption 6 protects against clearly unwarranted invasions of personal privacy.

The EPA suggests that Congress, having required public disclosure of permits and permit applications, placed a premium on citizen involvement in the regulatory process under the Clean Water Act. Therefore, the agency argues, there must be a public interest in releasing personal information about CAFO owners to the requesters. The Clean Water Act, however, did not amend the public interests that are relevant *under FOIA—i.e.*, shedding light on an agency's performance of its statutory duties. That the requesters may seek to vindicate policies underlying the Clean Water Act does not affect the FOIA analysis under Exemption 6. *See FLRA*, 510 U.S. at 499.

All told, we conclude that the EPA's disclosure of spreadsheets containing personal information about owners of CAFOs would invade a substantial privacy interest of the owners while furthering little in the way of public interest that is cognizable under FOIA. Under those circumstances, disclosure "would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6); *see FLRA*, 510 U.S. at 500-02, and it was an abuse of discretion for the agency to conclude otherwise. Accordingly, the agency records at issue were exempt from mandatory disclosure. *Campaign for Family Farms*, 200 F.3d at 1189.

The Farm Bureau and the Producers Council urge this court to go further and direct the entry of injunctive relief that would prevent the EPA in its discretion from disclosing the records. We explained in *Campaign for Family Farms* that normally,

"an agency has discretion to disclose information within a FOIA exemption, unless something independent of FOIA prohibits disclosure." *Id*. at 1185. The associations contend that the Privacy Act is a source of law independent of FOIA that forbids disclosure. They rely on a provision of the Privacy Act that prevents an agency from disclosing any record which is contained in a system of records without the prior written consent of the individual to whom the record pertains, unless disclosure of the record would be required under FOIA. 5 U.S.C. § 552a(b)(2). The associations also contend that it would be arbitrary and capricious under the APA for the EPA to release information contrary to an internal agency policy that allegedly requires categorical withholding of information subject to Exemption 6. The EPA responds that the cited provision of the Privacy Act does not apply to the records at issue in this case, and that the agency has no internal policy in place that would have prohibited disclosure if the agency had applied Exemption 6. The record was not developed, however, concerning any internal agency policy, and the district court—having dismissed the case for lack of standing—did not address whether injunctive relief was appropriate on either ground asserted by the associations. We therefore remand the case for further proceedings on this question.

*       *       *

For the foregoing reasons, the judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.

———————————————